Case No:  12-17271

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

RONALD M. GUTIERREZ, On Behalf of Himself
and All Others Similarly Situated
Plaintiff - Appellant,

vs.

WELLS FARGO BANK N.A. d/b/a WELLS FARGO HOME MORTGAGE;
and WELLS FARGO REAL ESTATE TAX SERVICES, LLC,
Defendants - Appellees.

Appeal from the United States District Court
for the Northern District of California, San Francisco Division
No. 3:12-cv-01135-SI
The Honorable Susan Illston

**APPELLANT'S REPLY BRIEF**

BLOOD HURST & O'REARDON LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
PAULA M. ROACH (254142)
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619-338-1100
tblood@bholaw.com
lhurst@bholaw.com
proach@bholaw.com

Attorneys for Plaintiff-Appellant

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................ 1

II.    ARGUMENT.............................................................................. 3

    A.    Facts Concerning Other Lenders and Other Allegations, Developed in Other Cases, Are Irrelevant ......................................... 3

    B.    The Deeds of Trust Are Irrelevant and Do Not Contradict Plaintiff's Allegations......................................................... 7

    C.    The Fact That RESPA Regulates Tax Service Fees and Escrow Services Separately Is Also Not Relevant.......................... 12

    D.    The Settlement Cost Booklet Supports Plaintiff's Allegations.............................................................. 14

    E.    Plaintiff's Allegations State Claims Under the UCL, Conversion, and Money Had and Received.................................. 18

        1.    The UCL Claim.................................................. 19

            a.    Plaintiff Alleges a Predicate Violation ....................... 19

            b.    Plaintiff Alleges Wells Fargo's Conduct Is Unfair ................................................... 21

        2.    Conversion and Money Had and Received........................... 22

            a.    Conversion................................................... 23

            b.    Money Had and Received....................................... 24

III.    CONCLUSION......................................................................... 25

00059061

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) .......................................................................21

*Chambner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000) ...........................................................22

*Chazen v. Centennial Bank*,
    61 Cal. App. 4th 532 (1998) ..............................................................23

*Collins v. FHMA-USDA*,
    105 F.3d 1366 (11th Cir. 1997) .........................................................16

*Dalton v. Countrywide Home Loans, Inc.*,
    828 F. Supp. 2d 1242 (D. Co. 2011)..................................................16

*Echevarria v. Chicago Title & Trust Co.*,
    256 F.3d 623 (7th Cir. 2001) .......................................................14, 15

*Farmers Ins. Exchange v. Superior Court*,
    2 Cal. 4th 377 (1992) ........................................................................19

*Frazier v. Accredited Home Lenders, Inc.*,
    607 F. Supp. 2d 1254 (M.D. Ala. 2009)..............................................4

*Freeman v. Quicken Loans, Inc.*,
    132 S. Ct. 2034 (2012)........................................................................7

*Friedman v. Mkt. St. Mortg. Corp.*,
    520 F.3d 1289 (11th Cir. 2008) ..........................................................5

*Grant v. Shapiro & Burson*,
    871 F. Supp. 2d 462 (D. Md. 2012)...................................................16

*J.W. v. Fresno Unified Sch. Dist.*,
    626 F.3d 431 (9th Cir. 2010) ..........................................................6, 8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...............................................................19

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) .........................................................................20

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ..................................................................21

*Martinez v. Wells Fargo Home Mortg., Inc.*,
   598 F.3d 549 (9th Cir. 2010) ..................................................................20

*McKell v. Washington Mutual*,
   142 Cal. App. 4th 1457 (2006) .........................................10, 20, 21, 23

*Michalowski v. Flagstar Bank, FSB*,
   2002 U.S. Dist. LEXIS 1245 (N.D. Ill. January 25, 2002)...............4, 10

*Morgan v. AT&T Wireless Services, Inc.*,
   177 Cal. App. 4th 1235 (2009) ...............................................................19

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
   522 F.3d 1049 (9th Cir. 2008) ..................................................................8

*Plummer v. Day/Eisenberg, LLP*,
   184 Cal. App. 4th 38 (2010) ...................................................................23

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ....................................................................8

*Steiner v. Rowley*,
   35 Cal. 2d 713 (1950) ..............................................................................24

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal. 4th 553 (1998) .............................................................................19

*Travelers Prop. Cas. Co. v. ConocoPhillips Co.*,
   546 F.3d 1142 (9th Cir. 2008) ................................................................13

*Van Buskirk v. Cable News Network, Inc.*,
   284 F.3d 977 (9th Cir. 2002) ....................................................................8

*Walsh v. Nev. Dep't of Human Res.*,
   471 F.3d 1033 (9th Cir. 2006) ............................................................22

*Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*,
   713 N.E.2d 543 (Ill. 1999) ..................................................................5

*Weiss v. Marcus*,
   51 Cal. App. 3d 590 (1975) ................................................................24

*Williams v. Gerber Prods. Co.*,
   523 F.3d 934 (9th Cir. 2008) .............................................................21

*Wooten v. Quicken Loans, Inc.*,
   626 F.3d 1187 (11th Cir. 2010) ....................................................14, 15

*Wydler v. Bank of America, Inc.*,
   360 F. Supp. 2d 1302 (S.D. Fla. 2005) ............................................4, 5

## Statutes

12 U.S.C. §2603 ..................................................................................16

12 U.S.C. §2604 ......................................................................10, 14, 16

12 U.S.C. §2607 ...............................................................................7, 15

12 U.S.C. §2609 ..................................................................................13

12 U.S.C. §5531(c) ..............................................................................20

12 U.S.C. §5536 ..................................................................................20

California Business & Professions Code §17200 ...........................19, 22

## I.     INTRODUCTION

This appeal is about whether plaintiff's allegations that Wells Fargo collected fees for a service it did not perform are sufficient to state a claim for relief under California's Unfair Competition Law ("UCL"), conversion, and money had and received.  Because the record properly before the district court supports plaintiff's allegations, the district court was required to accept those allegations as true.  The district court did not do that and thus, erred.

Running from the district court's order, Wells Fargo ignores these issues and instead spends the majority of its response arguing that it is generally permitted to charge a fee to verify that its borrowers pay their property taxes.  *See*, *e.g.*, D.E. 15 at 13.  But that is not what is alleged.  Rather, plaintiff alleges that Wells Fargo charged a "Tax Service Fee" of $65.00 on the HUD-1 settlement statement specifically to cover the costs of Wells Fargo's payment of property taxes as defined in the Settlement Cost Booklet.  Because Wells Fargo did not perform that service for plaintiff, its collection of the Tax Service Fee was improper.  That Wells Fargo may be permitted to collect a fee to perform some other service is not at issue.

Plaintiff alleges that although the HUD-1 settlement statement does not describe the purpose of the fee, the Settlement Cost Booklet that Wells Fargo is required to provide to borrowers and in fact did, including to plaintiff, explains that

the Tax Service Fee "covers the cost of your lender engaging a third party to monitor and handle the payment of your property tax bills." ER 13, 14. Wells Fargo does not contest that it did not "monitor and handle" the payment of plaintiff's property tax bills, because plaintiff paid his own property taxes. Accordingly, Wells Fargo received money for a service it did not provide. ER 14. Further, the act described by Wells Fargo in the Settlement Cost Booklet is for a single service which, by necessity, is provided in two steps – "monitor and handle" the payment of property tax bills. One must monitor tax records to know how much to then pay. The Settlement Cost booklet does not say "monitor *or* handle."

Wells Fargo's focus on RESPA and RESPA-related case law is similarly misplaced. Whether RESPA applies to overcharges, whether RESPA generally permits the collection of fees to verify that property taxes are independently paid, or whether other lenders collect fees for that purpose, are all irrelevant to whether Wells Fargo's collection of the Tax Service Fee for the purpose of paying plaintiff's property tax bill was proper.

Similarly irrelevant are the Deeds of Trust plaintiff received when his loan closed. The Deeds of Trust are not the proper subject of judicial notice because whether they permit Wells Fargo to charge a Tax Service Fee to verify the payment of taxes is disputed. The district court properly denied Wells Fargo's request for judicial notice on this basis and this Court should affirm that holding

and deny Wells Fargo's independent request before this Court. The Deeds of Trust do not conflict with plaintiff's allegations because they do not mention the "Tax Service Fee" or the settlement charges identified in the HUD-1 settlement statement. Instead, they relate to the obligations of the parties after closing over the life of the loan. That Section 4 of the Deeds of Trust permits Wells Fargo to collect an unnamed "one-time fee" to verify that property taxes are paid after a lien is created on the property for non-payment of taxes, does not have any bearing on the purpose of the Tax Service Fee listed in the HUD-1 settlement statement. In any event, plaintiff alleges, and the Settlement Cost Booklet confirms, that the Tax Service Fee is intended to "monitor and handle the payment of your property tax bills." ER 13; ER 235. The district court erred in finding as a matter of law that this did not support plaintiff's claims.

## II.     ARGUMENT

### A.     Facts Concerning Other Lenders and Other Allegations, Developed in Other Cases, Are Irrelevant

Wells Fargo's "brief discussion of tax service fees" attempts to incorporate facts from cases involving different lenders, different allegations, and different causes of action as if they were the facts alleged here. *See* D.E. 15 at 9. Wells Fargo's reliance on these cases is misplaced.

Wells Fargo first cites several cases for the proposition that tax service fees are charged only to verify the payment of property taxes. The cases it cites

however, do not involve Wells Fargo, do not challenge the purpose of the alleged fee at issue, and do not create any black letter law on the purpose of tax service fees. In *Michalowski v. Flagstar Bank, FSB*, 2002 U.S. Dist. LEXIS 1245 (N.D. Ill. January 25, 2002) and *Wydler v. Bank of America, Inc.*, 360 F. Supp. 2d 1302 (S.D. Fla. 2005), plaintiffs alleged that the fees charged by Flagstar Bank and Bank of America (not Wells Fargo) to verify the payment of property taxes were excessive under RESPA. *Michalowski*, 2002 U.S. Dist. LEXIS 1245 at *15-16; *Wydler*, 360 F. Supp. 2d at 1304. In neither case did plaintiffs argue that the fee charged was for a service never provided or that the fee was for a different service. And in *Frazier v. Accredited Home Lenders, Inc.*, 607 F. Supp. 2d 1254, 1260 (M.D. Ala. 2009), a case decided at the summary judgment stage, plaintiff alleged Accredited improperly included fees to monitor "the current tax lien status" of the loan in the finance charge. Again, plaintiff in *Frazier* did not challenge whether the stated service was actually provided.

Here, by contrast, plaintiff alleges not that the Tax Service Fee is excessive or improperly disclosed under RESPA or any other statute, but that Wells Fargo charged the fee for the payment of property taxes and did not provide that service to the 10 percent of its borrowers who paid their own property taxes. ER 14. The narrow issue on appeal is whether plaintiff's allegations support his claims. That other banks charge fees for different purposes is irrelevant to this appeal.

Similarly misplaced is Wells Fargo's citation to cases where other courts have found that based on the facts alleged there a lender may charge a fee for a service it provides. *See* D.E. 15 at 10. *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289 (11th Cir. 2008) and *Wydler*, 360 F. Supp. 2d at 1304-07 are cases where defendant lenders properly informed borrowers that they were collecting a fee to verify that property taxes were paid, and in fact provided that service. But here, plaintiff alleges Wells Fargo informed him and other borrowers that the Tax Service Fee was for the payment of property taxes – which Wells Fargo did not do. ER 13, 14. Because Wells Fargo did not perform the service of paying plaintiff's property taxes, it was improper to charge for that service.

Additionally, whether non-escrowed borrowers like plaintiff pose more risk to a lender is irrelevant. *See* D.E. 15 at 10. In *Friedman*, the court simply noted that in that case concerning overcharges, defendant lender had provided evidence that non-escrowed loans pose a greater risk to the lender because the lender "relinquishes control over the payment of tax[es]...." 520 F.3d at 1296 n.7; *see also Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 713 N.E.2d 543, 554 (Ill. 1999) (defendant charged an "escrow suspension fee" because it lost "its right to demand the protection of an escrow account...as security for the payment of taxes").

00059061

Even if it were true that non-escrowed borrowers pose a risk to lenders, the record shows that Wells Fargo protected itself from that risk because it requires as conditions to waiving escrow that borrowers both submit verification that they paid their property taxes and agree to pay any damages incurred by Wells Fargo as the result of the borrowers' non-payment of taxes. ER 52; ER 69. In fact, even on this appeal, Wells Fargo recognizes, albeit through an improper request for judicial notice, that it is permitted to require borrowers to provide proof of payment.[1] D.E. 15 at 15-16. But this case is about whether Wells Fargo can charge a fee for a service Wells Fargo did not provide.

Finally, cases involving overcharges under RESPA have no application here.[2] *See* D.E. 15 at 11 ((citing *McKell v. Washington Mutual*, 142 Cal. App. 4th 1457, 1465-66 (2006) (holding that plaintiffs' challenge to fees stated in the deeds of trust as being excessive under RESPA was properly dismissed) and *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554 (9th Cir. 2010) (holding that plaintiffs' challenge to excessive underwriting fees was properly dismissed

---

[1] Wells Fargo asks the Court to take judicial notice of the Freddie Mac servicing guidelines that it purports require a lender to confirm that property taxes have been timely paid. D.E. 15 at 15. Judicial notice is not appropriate for this purpose and has been separately contested. *See J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 440 (9th Cir. 2010).

[2] Wells Fargo makes the irrelevant observation that plaintiff's counsel was involved in other litigation concerning whether tax service fees charged by Wells Fargo and Washington Mutual were excessive. *See* D.E. 15 at 11. Those cases involve different allegations but tend to show that plaintiff's counsel are experienced in this area, an issue relevant at the class certification stage.

because RESPA does not cover overcharges)).  Plaintiff does not contend that the Tax Service Fee was excessive for a service provided under RESPA or any other statute; he contends it was wrongfully charged to the ten percent of borrowers, including plaintiff, who pay their own property taxes.

Citing *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034 (2012), Wells Fargo makes the broad yet incorrect statement that RESPA does not "prohibit a lender from charging for unearned settlement fees."  D.E. 15 at 12.  The Supreme Court in *Freeman* merely held that "[i]n order to establish a violation of §2607(b) [of RESPA], a plaintiff must demonstrate that a charge for settlement services was divided between two or more persons."  *Freeman*, 132 S. Ct. at 2044.  Because plaintiffs in *Freeman* did not make those allegations, their claims were properly dismissed.  *Id.* at 2038.  The Supreme Court expressed no opinion on whether a lender's charging of settlement fees for a service it does not provide violates RESPA or any other statute because that issue was not before the Court. Regardless, RESPA is not alleged here.

## B.    The Deeds of Trust Are Irrelevant and Do Not Contradict Plaintiff's Allegations

Presupposing this Court's grant of its Request for Judicial Notice (D.E. 15 at 13 n.9), despite the district court's correct refusal to do so (ER 7), Wells Fargo contends that the Deeds of Trust plaintiff received when his loan closed informed plaintiff that the Tax Service Fee is collected to verify that property taxes were

paid. D.E. 15 at 13.

Wells Fargo's request for judicial notice is improper for the same reasons it was in the district court. *See* Appellant's Opposition to Appellees' Request for Judicial Notice (concurrently filed); ER 140. While the existence of the trust deeds may be judicially noticed, judicial notice may not be taken of the statements contained therein because they are in dispute.[3] *See J.W.*, 626 F.3d at 440.

Even on the merits, Wells Fargo is mistaken. The issue on appeal is whether plaintiff has alleged a set of facts that would entitle him to relief. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008). A motion to dismiss based on matters properly the subject of judicial notice is only appropriate where the plaintiff's allegations are directly contradicted. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). Wells Fargo fails to demonstrate how the Deeds of Trust contradict plaintiff's allegations.

The Deeds of Trust do not concern loan settlement costs. Instead, the Deeds of Trust relate to post-settlement charges that may be incurred over the course of the loan including payment on the loan (ER 50 (§1)), application of payments to interest (ER 51 (§2)), the funding of escrow accounts (*id.* (§3)), obligations to

---

[3] In the alternative Wells Fargo asks the Court to incorporate the Deeds of Trust by reference, but the Deeds of Trust are not referenced in the FAC because they are not relevant and do not form the basis of plaintiff's claims. Therefore, the doctrine of incorporation does not apply. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

discharge liens (ER 52 (§4)), and obligations to maintain property insurance (ER 53 (§5)).

Section 4 of the Deeds of Trust in particular, as relied on by Wells Fargo, states:

> **4. Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument….To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.
>
> Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien…; (b) contests the lien in good faith by, or defends against enforcement of the lien while those proceedings are pending…; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain property over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.
>
> Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

ER 52-53 and ER 69-70 (emphasis in original).

Wells Fargo argues that it is the last sentence of this section that informs plaintiff that the Tax Service Fee collected as a loan settlement cost is for the purpose of tax verification.  D.E. 15 at 13.  However, Section 4 merely concerns liens on the property.  Nothing in its plain language, including the last sentence, discusses Additional Settlement Charges or the "Tax Service Fee" as identified in

the HUD-1 settlement statement.  Whether Wells Fargo discloses at a later time through the Deeds of Trust that it is permitted to collect an unnamed "one-time charge for real estate tax verification" has nothing to do with whether the Tax Service Fee actually charged by Wells Fargo on the HUD-1 is for the payment of property taxes.

If Wells Fargo's assertion were law, a lender could evade the requirement that settlement costs be clearly and plainly disclosed by burying those costs in the Deeds of Trust.  This is precisely the conduct the Settlement Costs Booklet and HUD-1 disclosure are intended to prevent.  *See* 12 U.S.C. §2604(a)-(b).

Nothing in the cases Wells Fargo cites provides any black letter law on the purpose of language in the Deeds of Trust.  *McKell* and *Michalowski* do not involve allegations that the lender there (not Wells Fargo) charged for a service in the HUD-1 settlement statement that it did not provide.  Additionally, both cases involve breach of contract claims based on allegedly excessive fees.  *McKell*, 142 Cal. App. 4th at 1489 (alleging breach of contract claim based on Washington Mutual's excessive fee to verify the payment of property taxes as stated in the deed of trust); *Michalowski*, 2002 U.S. Dist. LEXIS 1245, *15 (alleging that tax service fee charged by Flagstar was excessive).  That other lenders in those cases charged fees similar to those stated in the Deeds of Trust here, again, has nothing to do with whether Wells Fargo's Tax Service Fee listed in the HUD-1 settlement statement

and described in the Settlement Cost Booklet, collected from plaintiff in advance of providing the Deeds of Trust, was for the purpose of paying property taxes.

Wells Fargo also misses the mark with its contention that plaintiff is asking the Court to "replace the words 'real estate tax verification and/or reporting service' with the words 'escrow service'" in Section 4 of the Deeds of Trust. *See* D.E. 15 at 14. Plaintiff makes no allegations concerning the Deeds of Trust because they are irrelevant to his claim concerning the HUD-1 settlement statement and accompanying Settlement Cost Booklet, which state that the fee is for the payment of real property taxes, not for a tax verification service. ER 13; ER 235.

Additionally, nothing in Section 3 of the Deeds of Trust contradicts plaintiff's allegations. *See* D.E. 15 at 15. In fact, the opposite is true. Section 3 concerns "Funds for Escrow Items" that are defined to include the actual property taxes, leasehold payments or ground rents, premiums for particular insurance, and mortgage insurance premiums. ER 51; ER 68. Section 3 expressly provides that borrowers like plaintiff who have waived escrow "shall furnish to Lender receipts evidencing" their payment of property taxes. ER 52; ER 69. These borrowers are further obligated because any payment by Wells Fargo of delinquent property taxes becomes additional debt on which Wells Fargo collects interest. ER 54-55; ER 71-72. Plaintiff made the same promises when he elected to waive escrow. ER 14

(¶12); *see also* ER 198 (Escrow Waiver Disclosure).

Accordingly, Wells Fargo's argument that its verification of tax payments is its only protection from liens is simply untrue. D.E. 15 at 10. As Wells Fargo itself explains, Wells Fargo is permitted to require verification from borrowers that the property taxes were in fact paid. *Id.* at 15-16 (citing Freddie Mac Guidelines). And this is precisely what Wells Fargo requires. ER 52; ER 69.[4]

Notably, plaintiff alleges that Wells Fargo requires ***all*** of its borrowers to pay a Tax Service Fee, including those for which Wells Fargo pays their property taxes. ER 13 (¶10). Wells Fargo fails to explain why it would need to charge the Tax Service Fee to these borrowers if in fact its purpose was to verify that taxes were paid. Certainly Wells Fargo would know by its own payment that they were paid.

## C.    The Fact That RESPA Regulates Tax Service Fees and Escrow Services Separately Is Also Not Relevant

Wells Fargo again steadfastly ignores plaintiff's allegations and contends that RESPA supports its theory that tax services are not dependent on lender-performed escrow services because RESPA regulates escrow services separately

---

[4] Wells Fargo contends that its collection of $65 to verify taxes amounts to "a little more than $2 over the course of a loan's 30-year term." D.E. 15 at 16. Wells Fargo however fails to account for the fact that it charges the $65 fee every time a borrower refinances, just as it did with plaintiff. ER 15-16 (¶19). Nonetheless, whether Wells Fargo chose to charge the correct amount for a service not provided to plaintiff is not relevant.

from tax services.  D.E. 15 at 17-19.

Because Wells Fargo did not raise the RESPA argument below, it is waived, and should not be considered on appeal.  *Travelers Prop. Cas. Co. v. ConocoPhillips Co*., 546 F.3d 1142, 1146 (9th Cir. 2008); ER 32-38.

Even on the merits, it fails.  Wells Fargo argues that because RESPA regulates the amounts a lender can put into an escrow account separately from the amounts a lender may charge for tax services, tax service fees must be unrelated to escrow accounts.  D.E. 15 at 17-18.  Wells Fargo misses the point.  12 U.S.C. §2609 of RESPA, as cited by Wells Fargo, simply limits the amounts a lender can collect for an escrow account to the estimated property taxes to be paid.  In other words, Wells Fargo cannot require its borrowers to overfund their escrow accounts. Section 2609 of RESPA, however, is silent on the purpose of a Tax Service Fee and in no way supports Wells Fargo's contention that it can collect a Tax Service Fee to non-escrowed borrowers.

Regardless, plaintiff does not allege a cause of action under RESPA and the statute does not apply to plaintiff's claims.  The issue here is whether the Tax Service Fee listed as an "Additional Settlement Charge" on the HUD-1 settlement statement and defined in the Settlement Cost Booklet was properly assessed to borrowers that elected to monitor and handle the payment of their own property tax bills.  Whether RESPA separately regulates the amounts that can be put into an

escrow account is irrelevant.  Indeed, plaintiff does not have an escrow account with Wells Fargo.

### D.     The Settlement Cost Booklet Supports Plaintiff's Allegations

Wells Fargo argues that the district court properly ruled that the HUD Settlement Cost Booklet was not relevant because the Settlement Cost Booklet "is not a "rule, regulation, or interpretation" for purposes of RESPA'" (quoting *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187 (11th Cir. 2010)), and there is no private right of action under Section 2604 of RESPA based on Wells Fargo's failure to provide disclosures.  D.E. 15 at 20-21.  Wells Fargo is off the mark on both points.

Plaintiff does not make any claim under RESPA.  Whether the Settlement Cost Booklet can be used to interpret RESPA or whether plaintiff has a private right of action under Section 2604, are simply not at issue.

*Wooten* and *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623 (7th Cir. 2001), cited by Wells Fargo (D.E. 15 at 20), do not prohibit reference to the Settlement Cost Booklet to determine the meaning of terms in the HUD-1 settlement statement.  Rather, those courts merely found that HUD booklets do not trump the plain language of RESPA.  But RESPA has no application here.

For example, in *Wooten*, plaintiffs alleged that defendant violated RESPA because it charged plaintiffs "points" on a HUD-1 for a discounted interest rate that

plaintiffs did not receive.  Affirming the district court, the Eleventh Circuit found that "points" were not a "settlement service" as expressly defined by RESPA and thus, dismissed plaintiffs' RESPA claim.  *Id.* at 1195.  The court declined plaintiffs' invitation to rely on the definition of "settlement service" in the "accompanying booklet" because the statutory text of RESPA defined "settlement service."  *Id.*  Similarly, in *Echevarria*, the court held that the plain language of section 2607(b) of RESPA applied only to the splitting of fees and a HUD informational booklet could not overrule that.  256 F.3d at 628-30.

Here, there are no competing definitions of "Tax Service Fee."  The "Tax Service Fee" is explicitly listed on the HUD-1 as an "Additional Settlement Charge" of $65 to "WFRETS."  ER 14.  Without some additional explanation a borrower is not told the purpose of the "Tax Service Fee" other than that which can be gleaned from the name of the fee.  Accordingly, the Settlement Cost Booklet, which Wells Fargo is required to provide to the borrower by law, explains those fees.  *Id.*  That is the only document borrowers receive during the loan process to explain the Tax Service Fee.  As the Settlement Cost Booklet explains, the "tax service fee" "covers the cost of your lender engaging a third party to monitor and handle the payment of your property tax bills."  ER 13; ER 235.  Wells Fargo does not point to any competing definition.

Additionally, the cases cited by Wells Fargo to support the proposition that RESPA "does not authorize any private cause of action arising out of a lender's provision of the booklet or the failure to do so" (D.E. 15 at 20 and n.11) do not actually stand for that proposition, and are nonetheless irrelevant. Those cases merely hold that there is no private right of action under Section 2604 of RESPA, which requires that lenders make certain disclosures. *See*, *e.g.*, *Collins v. FHMA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1997) ("there is no private civil action for a violation of 12 U.S.C. §2604(c)); *Grant v. Shapiro & Burson*, 871 F. Supp. 2d 462, 470 (D. Md. 2012) (holding that RESPA does not provide plaintiff with a private right of action to challenge lender's failure to provide certain disclosures); *Dalton v. Countrywide Home Loans, Inc.*, 828 F. Supp. 2d 1242, 1249-50 (D. Co. 2011) (recognizing "that Sections 2603 and 2604, 12 U.S.C., of RESPA do not expressly provide for a private right of action"). Plaintiff does not assert a claim under any section of RESPA and does not assert a claim based on Wells Fargo's failure to disclose.

Still, Wells Fargo contends that even if the Settlement Cost Booklet is considered, the district court properly found it does not support plaintiff's theory. D.E. 15 at 22. Wells Fargo first argues that the definition of Tax Service Fee in the Settlement Cost Booklet is consistent with the Deeds of Trust and RESPA because collection of the fee to monitor plaintiff's tax payments was necessary to prevent

tax liens.  *Id.*  But, plaintiff alleges and the Settlement Cost Booklet confirms that the Tax Service Fee was for the costs to "monitor ***and*** handle the payment of your property tax bills."  ER 235 (emphasis added).  Nothing in the Deeds of Trust or RESPA indicates otherwise.  Additionally, as discussed above, Wells Fargo protected itself from liens by requiring plaintiff to agree to provide proof of payment of his taxes as a condition to waiving escrow.

Additionally, the term "third party" in the definition of Tax Service Fee is not inconsistent with plaintiff's allegations.  D.E. 15 at 23.  Whether Wells Fargo actually pays its subsidiary WFRETS or itself to "monitor ***and*** handle the payment of … property tax bills" is irrelevant because Wells Fargo did neither for plaintiff since Wells Fargo did not pay his tax bills.

Finally, plaintiff does not improperly "focus on a single sentence in the booklet's glossary" and ignore the context.  *Id.*  There is only one definition of Tax Service Fee and that is in the glossary section of the Settlement Cost Booklet.  ER 235.  That plaintiff relies on this definition to determine the purpose of Tax Service Fee is reasonable and is in fact the purpose of the Booklet.  *See* D.E. 11-1 at 17 (citing 12 U.S.C. §2604(a), which is intended to help borrowers "better understand the nature and cost of real estate settlement services" and §2604(b) mandating that the Booklet "shall include in clear and concise language … a description and explanation of the nature and purpose of each cost").

The Booklet's explanation that "Line 806 is the fee paid to a tax service provider for information on the real estate property taxes" merely provides a truncated explanation of the Tax Service Fee and is not inconsistent with the full definition of Tax Service Fee in the glossary, which explains that the fee is to "monitor **and** handle" the payment of taxes. ER 220; ER 235. And for borrowers with impound accounts, Wells Fargo in fact monitors and handles the payment of their taxes. As plaintiff alleged, Wells Fargo obtains "information on the real estate property taxes" in order to "monitor and handle" them. *See* D.E. 11-1 at 24; ER 13-14 (alleging that "[i]n order to make the tax payments on its borrowers behalf, Wells Fargo obtains from the relevant tax authorities the tax amount owed").

In fact, it was the district court that improperly focused on this one portion of the Booklet and determined that it was consistent with Wells Fargo's version of events. ER 8. Because the Booklet when read in totality supports plaintiff's allegations, the district court was required to accept them as true and deny Wells Fargo's motion to dismiss.

### E. Plaintiff's Allegations State Claims Under the UCL, Conversion, and Money Had and Received

Although the district court did not individually address each of plaintiff's claims, Wells Fargo does in its response. Plaintiff does not appeal the district court's order with regard to the breach of contract claim (D.E. 11-1 at 14 n.4), and

thus, does not address Wells Fargo's arguments concerning that claim (*see* D.E. 15 at 25). Plaintiff has stated claims for violation of the unfair and unlawful prong of the UCL, for conversion, and for money had and received.

### 1. The UCL Claim

The UCL has three prongs; it can be violated by conduct that is "fraudulent," "unfair," or "unlawful." Cal. Bus. & Prof. Code §17200. "Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition." *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1253 (2009); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Plaintiff alleges that Wells Fargo violated the unlawful and unfair prongs of the UCL by collecting a Tax Service Fee for a service it did not provide. ER 18.

### a. Plaintiff Alleges a Predicate Violation

In proscribing any unlawful business practice, section 17200 "borrows" violations of other laws and treats them, when committed pursuant to a business activity, as unlawful practices independently actionable under section 17200. *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992). Thus, "unlawful" activities are "'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 560 (1998) (quoting *Bank of the West v.*

*Superior Court*, 2 Cal. 4th 1254, 1266 (1992)); *see also McKell*, 142 Cal. App. 4th at 1488 (RESPA violation can serve as predicate act).

Plaintiff alleges predicate violations of the Dodd Frank Act, 12 U.S.C. §5536(a)(1)(B), conversion, and money had and received. ER 18 (¶31). Wells Fargo contends the Dodd Frank Act cannot serve as a basis for the UCL claim because plaintiff must allege a violation of another law to state a claim under Dodd Frank. D.E. 15 at 27-28. Wells Fargo is wrong. The Dodd Frank Act prohibits "unfair, deceptive, or abusive act[s] or practice[s]." 12 U.S.C. §5536(a)(1)(B). A practice is "unfair" if it "is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers" and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. §5531(c). That is precisely what plaintiff alleges here. ER 19 (¶¶34, 35). Nothing in the Dodd Frank Act requires plaintiff to plead a predicate violation of another law.

Nor are these claims preempted by the National Bank Act. D.E. 15 at 28. As this Court in *Martinez* held, under certain circumstances it is the overcharging of fees that is preempted. 598 F.3d at 556. Plaintiff does not allege overcharge claims.

Wells Fargo also ignores the conversion and money had and received predicate violations. In *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

1134, 1159 (2003), the California Supreme Court unequivocally affirmed that common law violations are "unlawful" predicate acts under the UCL. Accordingly, because as demonstrated below, plaintiff adequately alleged claims for conversion and money had and received, he necessarily alleges a UCL claim.

### b.     Plaintiff Alleges Wells Fargo's Conduct Is Unfair

Similarly, plaintiff adequately alleges a claim under the "unfair" prong. California courts define an unfair business practice as either a practice that undermines a legislatively declared policy or threatens competition, or a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer. *Lozano v. AT&T Wireless Servs., Inc*., 504 F.3d 718, 736 (9th Cir. 2007); *see also Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 186-87 (1999). A defendant's practice is unfair if the utility of its conduct is outweighed by the gravity of the harm. *McKell*, 142 Cal. App. 4th at 1473. Whether a business practice is unfair is a question of fact not appropriate for a motion to dismiss. *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th Cir. 2008).

Plaintiff sufficiently pled that the utility of Wells Fargo's collection of the Tax Service Fee from borrowers who pay their own property taxes is outweighed by the harm they suffered of paying a fee for no services. ER 18-19 (¶¶33-35). Whether Wells Fargo's collection of the Tax Service Fee as described by the

Settlement Cost Booklet was unfair, is a question of fact that the district court should not have resolved on a motion to dismiss.

Plaintiff's "unfair" prong claim is not barred. As this Court in *Chambner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000) recognized, "'[t]o forestall an action under [section 17200], another provision must actually "bar" the action or clearly permit the conduct.'" *Id.* at 1048 (quoting *Cal-Tech*, 20 Cal. 4th at 183). Nothing in RESPA bars plaintiff's claim concerning Wells Fargo's charge for a service it did not provide. Nor does RESPA expressly permit such conduct. That Wells Fargo presents a different set of facts based on the Deeds of Trust does not change the fact that plaintiff has alleged sufficient facts, supported by the record properly before the Court, to state a claim under the UCL.

### 2.    Conversion and Money Had and Received

Wells Fargo did not challenge plaintiff's claims for conversion and money had and received to the district court. Rather, it argued in conclusory fashion that these claims failed because plaintiff's theory failed. ER 39-40; ER279. Wells Fargo has waived any right to challenge these claims on appeal. *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("[T]he issue must be raised sufficiently for the trial court to rule on it.") (internal quotations omitted). Nonetheless, its arguments fail on their merits.

### a.    Conversion

The elements of conversion are: (1) a plaintiff's ownership or right to possession of property; (2) the defendant's conversion by a wrongful act; and (3) damages. *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 45 (2010). Wells Fargo circularly argues plaintiff did not allege ownership or right to possession of the Tax Service Fee because Wells Fargo had a right to charge it. D.E. 15 at 30. Wells Fargo cannot collect money for a service it did not provide. Whether Wells Fargo could have, under different circumstances, collected a fee to verify plaintiff's tax payments, is not at issue. Similarly nonsensical is Wells Fargo's contention that plaintiff has not alleged an "'identifiable sum.'" *Id.* (quoting *McKell*, 142 Cal. App. 4th at 1491). Plaintiff alleged Wells Fargo wrongfully collected $65 to "handle the payment" of plaintiff's property taxes knowing that plaintiff would pay his taxes himself. ER 12, 14, 19 (¶¶7, 13, 40). It cannot get more identifiable then that.

Additionally, plaintiff need not allege that Wells Fargo was holding the Tax Service Fee in trust for someone else. *See* D.E. 15 at 30. In *McKell*, the court simply found that plaintiff's conversion claim based on overcharges was insufficient because there was no allegation that the money was taken and used for another purpose. 142 Cal. App. 4th at 1491. But where defendant takes money for one purpose and uses it for another, conversion is alleged. *See*, *e.g.*, *Chazen v.*

*Centennial Bank*, 61 Cal. App. 4th 532, 543 (1998) (finding conversion plead where plaintiff alleged bank made charges on a trust account for a wrongful purpose).

### b.     Money Had and Received

Money had and received occurs when "one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter." *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975). Plaintiff alleges Wells Fargo received money that belongs to plaintiff (the Tax Service Fee, ER 20 (¶44)) and the money should be paid back to plaintiff because it was wrongfully collected (*Id.* (¶45)). Again, that Wells Fargo presents a defense based on the Deeds of Trust does not make plaintiff's allegations insufficient and would be inappropriate to resolve on a motion to dismiss. *See* D.E. 15 at 31. Additionally, at the motion to dismiss stage plaintiff may allege money had and received as an alternative to breach of contract. *Steiner v. Rowley*, 35 Cal. 2d 713, 720 (1950).

## III.   CONCLUSION

For the foregoing reasons, the district court's order dismissing the First Amended Complaint should be reversed and the case remanded for further proceedings.

Dated:  May 8, 2013                    BLOOD HURST & O'REARDON, LLP
                                        TIMOTHY G. BLOOD (149343)
                                        LESLIE E. HURST (178432)
                                        PAULA M. ROACH (254142)


                                        By:        *s/ Leslie E. Hurst*
                                               LESLIE E. HURST

                                        701 B Street, Suite 1700
                                        San Diego, CA  92101
                                        Tel: 619-338-1100
                                        Fax: 619-338-1101
                                        tblood@bholaw.com
                                        lhurst@bholaw.com
                                        proach@bholaw.com

                                        *Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE TO FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1

Pursuant to Fed R. App. P. 32(a)(7)(C) and Ninth circuit Rule 32-1, I certify that the attached brief is proportionately space, has a typeface of 14 points, and contains 6,025 words.

Dated: May 8, 2013                    By:        *s/ Leslie E. Hurst*
                                                   LESLIE E. HURST

00059061

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2013, I electronically filed Appellant's Reply Brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 8, 2013.

*s/ Leslie E. Hurst*
_____
LESLIE E. HURST

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619-338-1100
Fax: 619-338-1101
lhurst@bholaw.com

00059061

27